IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| 1259 POST LLC d/b/a FLO'S PIZZERIA<br>& SPORTS BAR, on behalf of itself and all<br>others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EMCASCO INSURANCE CO. and<br>EMPLOYERS MUTUAL CASUALTY CO.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:20-cv-00626-PLM-PJG |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
<u>AND MOTION TO STRIKE CLASS ALLEGATIONS</u>

## <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................................................ iii

Factual Overview .................................................................................................... 1

Argument ................................................................................................................. 2

    I.      Plaintiff's Claims Are Ripe and the Court Has Subject Matter Jurisdiction ...... 2

    II.     Plaintiff's Claims Are Not Barred by a Failure to Exhaust Administrative
           Remedies ....................................................................................................... 3

    III.    Plaintiff's Claims Should Not Be Dismissed for Failure to State a Claim ........ 5

           A.  Motion to Dismiss Standard ................................................................... 5

           B.  Plaintiff's Claims Are Sufficient to State a Claim ................................. 6

    IV.    Plaintiff's Class Allegations Are Sufficient ..................................................... 9

           A.  Legal Standard ....................................................................................... 9

           B.  Plaintiff's Class Definitions Are Not Overinclusive "Fail-Safe"

              Definitions ............................................................................................... 10

           C.  Plaintiff's Proposed Classes Satisfy Rule 23(a) and (b) .................... 11

              1.  Commonality ................................................................................. 11

              2.  Predominance ................................................................................ 12

              3.  Typicality ...................................................................................... 14

Conclusion ............................................................................................................. 15

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Able Demolition v. City of Pontiac,*

    275 Mich. App. 577 (2007) ......................................................... 8

*Airgas USA, LLC v. Glen's LLC,*

    No. 1:18-cv-719, 2019 WL 1515157 (W.D.Mich. Feb. 14, 2019) ............... 8

*Allstate Insurance Co. v. King,*

    815 F.Supp. 1071 (W.D.Mich. 1993) ................................. 6

*APB Assocs. Inc. v. Bronco's Saloon Inc.,*

    315 F.R.D. 200 (E.D. Mich. 2016) ....................................... 9

*Ashcroft v. Iqbal,*

    556 U.S. 679, 129 S.Ct. 1937 (2009) ............................... 5

*Auto-Owners Ins. Co. v. Churchman,*

    440 Mich. 560, 489 N.W.2d 431 (1992) ........................... 6

*Babbit v. United Farm Workers Nat. Union,*

    442 U.S. 289, 99 S.Ct. 2301 (1979) ............................... 3

*Bd. Of Trustees of Painesville Twp. V. City of Painesville, Ohio,*

    200 F.3d 396 (6th Cir. 1999) ....................................... 2

*Bearden v. Honeywell Intern. Inc.,*

    2010 WL 1223936 (M.D. Tenn. 2010) ............................. 9

*Damnjanovic v. United States Dep't of Air Force,*

    135 F.Supp.3d 601 (E.D.Mich. 2015) ............................ 5

*Davis v. Cintas Corp.,*

    717 F.3d 476 (6th Cir. 2013) .................................... 14

*Doe v. Baum,*

    903 F.3d 575 (6th Cir. 2018) ................................... 6

*Evens-McCarthy v. Nationwide Mut. Ins. Co.,*

    No. 08-CV-12049DT, 2008 WL 11355526 (E.D.Mich. July 24, 2008) ...... 8

iii

*Garner Properties & Mgmt LLC v. City of Inkster,*

　　333 F.R.D. 614 (E.D.Mich. 2020) ................................................................. 12, 13

*Haidek v. University of Massachusetts-Amherstm*

　　933 F.3d 56 (1st Cir. 2019) ........................................................................ 6

*Hicks v. State Farm Fire & Cas. Co.,*

　　965 F.3d 452 (6th Cir. 2020) ..................................................................... 13

*Hunt v. Drielick,*

　　496 Mich. 366, 852 N.W.2d 562 (2014) ................................................ 6

*In re American Medical Sys. Inc.,*

　　75 F.3d 1069 (6th Cir. 1996) ..................................................................... 9

*In re FCA US LLC Monstable Elec. Gearlight Litig.,*

　　280 F. Supp. 3d 975 (E.D.Mich. 2017) ................................................ 8

*In re Onstar Contract Litig.,*

　　278 F.R.D. 352 (E.D.Mich. 2011) ........................................................... 14

*Jimenez v. Allstate Indem. Co.,*

　　No. 07-CV-14494, 2010 WL 3623176 (E.D.Mich. Sept. 15, 2010) ............. 9

*Kentucky Press Ass'n, Inc. v. Kentucky,*

　　454 F.3d 505 (6th Cir. 2006) ..................................................................... 2

*Logsden v. Hains,*

　　492 F.3d 334 (6th Cir. 2007) ..................................................................... 5

*Martin v. East Lansing Sch. Dist.,*

　　193 Mich. App. 166 (1992) ........................................................................ 8

*McGlone v. Bell,*

　　681 F.3d 718 (6th Cir. 2012) ..................................................................... 5

*McLeichey v. Bristol W. Ins. Co.,*

　　408 F.Supp.2d 516 (W.D.Mich. 2006) ................................................ 3, 4, 5

*Mid-Century Ins. Co. v. Fish,*

　　749 F.Supp.2d 657 (W.D.Mich. 2010) ................................................ 6

*Michigan Appalachian Railcar Servs. Inc. v. Boatright Enterprises, Inc.,*
     602 F.Supp.2d 829 (W.D.Mich. 2008) ........................................................... 7

*Oom v. Michaels Companies, Inc.,*
     No. 1:16-cv-257, 2017 WL 3048540 (W.D.Mich. July 19, 2017) ................. 10, 11, 12, 13

*Randleman v. Fidelity Nat'l Title Ins. Co.,*
     646 F.3d 347 (6th Cir. 2011) ......................................................................... 11, 12

*Raska v. Farm Bureau Mut. Ins. Co. of Mich.,*
     412 Mich. 355, 314 N.W.2d 440 (1982) ........................................................ 6, 7

*Rockey v. Courtesy Motors, Inc.,*
     199 F.R.D. 578 (W.D. Mich. 2001) ............................................................... 11, 12

*Roman v. Korson,*
     152 F.R.D. 101 (W.D.Mich. 1993) ................................................................ 15

*Sandusky Wellness Ctr. LLC v. ASD Specialty Healthcare, Inc.,*
     863 F.3d 460 (6th Cir. 2017) ......................................................................... 12

*Serrano v. Cintas Corp.,*
     No. CIV 04-40132, 2009 WL 910702 (E.D.Mich. Mar. 31, 2009) ............... 14

*Sprague v. Gen. Motors Corp.,*
     133 F.3d 388 (6th Cir. 1998) ......................................................................... 11, 12

*Stone v. Auto-Owners Ins. Co.,*
     307 Mich. App. 169 (2014) ............................................................................ 7

*Tredit Tire & Wheel Co. v. Regency Conversions, LLC,*
     636 F.Supp.2d 598 (E.D.Mich. 2009) ........................................................... 8, 9

*U.S. ex. Rel. Sheeldon v. Kettering Health Network,*
     816 F.3d 399 (6th Cir. 2016) ......................................................................... 6

*Vandenberg v. GE Life & Annuity Assur. Co.,*
     408 F.Supp.2d 487 (W.D.Mich. 2005) .......................................................... 6

*Wal-Mart Stores, Inc. v. Dukes,*
     564 U.S. 338 (2011) ........................................................................................ 13

*Wilkie v. Auto-Owners, Inc. Co.,*

469 Mich. 41 (2003) ............................................................................ 7

*Zehentbauer Family Land LP v. Chesapeake Expl. LLC,*

935 F.3d 496 (6th Cir. 2019) ............................................................ 13


Statutes

Fed. R. Civ. P. 12 ............................................................................... 5

Fed. R. Civ. P. 23 ............................................................................ 1, 11

MCPA Section 500.2102 ..................................................................... 4

MCPA Section 500.2104 ..................................................................... 4

MCPA Section 500.2113 ................................................................... 4, 5

MCPA Section 500.2114 ..................................................................... 4

MCPA Section 500.2403 ..................................................................... 5

MCPA Section 500.2406 ..................................................................... 5

MCPA Section 500.2407 ..................................................................... 5

MCPA Section 500.2408 ..................................................................... 5

MCPA Section 500.2410 ..................................................................... 5

MCPA Section 500.3301 ..................................................................... 5

MCPA Section 500.3303 ..................................................................... 4

Michigan Automobile Ins. Placement Facility Plan of Operation, § 7 .......... 4

Michigan Ins. Code, Chapter 21 .......................................................... 4

3 Newberg on Class Actions § 7:22 (5th Ed.) ....................................... 9

Defendants Emcasco Insurance Co. and Employers Mutual Casualty Co.'s ("EMC") failure to return or refund overpaid premiums has already injured Plaintiff making its claims ripe. Defendants also claim Plaintiff failed to exhaust administrative remedies, but they cite to authorities governing homeowners and auto insurance which do not apply to commercial insureds like Plaintiff.  EMC also seeks to dismiss Plaintiff's claims for failure to state a claim, but Plaintiff has sufficiently alleged a breach of contract (or, in the alternative, unjust enrichment or money had and received) for purposes of Rule 12(b)(6).  Defendants move to strike class allegations as well, but, especially at this early stage of litigation, Plaintiff has sufficiently alleged a class of insureds which has suffered injury as a result of EMC's course of conduct in failing to return excess premiums to their insureds, in contrast to what other insurance companies have done in response to the pandemic and the resulting reduction in exposure, and windfall, enjoyed by the insurance industry.  The Court should deny Defendants' motion in its entirety.

## FACTUAL OVERVIEW

In its First Amended Complaint (Doc. No. 15), Plaintiff alleges EMC sold it three policies (general liability, commercial auto, and umbrella) and collected premiums based on EMC's anticipated exposure under the policies.  Due to the unexpected worldwide COVID-19 pandemic and the related impact on Plaintiff's business, however, EMC ended up facing a dramatically lower rate of exposure, thereby reaping a windfall in the form of overpaid premiums from the Plaintiff and the proposed classes.  Other insurers, especially in the homeowners and auto context, have addressed this windfall by issuing premium refunds to their insureds.  Defendants have chosen to retain these overpayments, to the detriment of Plaintiff and other insureds.  Plaintiff maintains that the Defendants' conduct is in breach of the policies (especially in light of their implied covenant of good faith and fair dealing), and also constitutes unjust enrichment and money had and received.

1

EMC moves to dismiss these claims on the ground that any premium refund must await a premium audit at the end of the policy period.  The Defendants also seek to strike class action allegations in the complaint, before any discovery is conducted.  These arguments are without merit.  Plaintiff has stated viable causes of action that support relief now and not merely at the end of the policy period.  In addition, Defendants' common course of conduct toward its insureds presents a valid use of the class action device, especially where many of the insureds may be unable to pursue individual claims.

**ARGUMENT**

I.    Plaintiff's Claims Are Ripe and the Court Has Subject Matter Jurisdiction

Defendants contend this case does not present a justiciable case or controversy under Article III because Plaintiff's claims are not ripe.  They argue the ripeness doctrine precludes courts from hearing cases "anchored in future events that may not occur," or that involve "abstract disagreements[.]"  Doc. No. 17 at 12-13.  However, unlike some of the cases they cite,[1] the present case clearly involves a ripe claim.  Plaintiff seeks damages and other relief for the Defendants' wrongful failure to refund premium overpayments under contract and other theories, conduct which *already* has had a substantial financial impact on the Plaintiff and putative class members struggling to remain in business amidst the pandemic.

As the Sixth Circuit has noted, "the plaintiffs' burden of proving federal question jurisdiction in an effort to defeat the defendant's Rule 12(b)(1) motion is 'not onerous.'"  *Bd. of Trustees of Painesville Twp. v. City of Painesville, Ohio*, 200 F.3d 396, 398 (6th Cir. 1999) (citations omitted).  As the Defendants point out, the Sixth Circuit focuses on three factors,

---

[1] *See, e.g., Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 509-11 (6th Cir. 2006) (claim challenging exclusion of press from juvenile proceedings under statute not ripe where it was speculative that courts would in fact close proceedings to media).

especially the "likelihood that the harm alleged will ever come to pass[.]"  Doc. No. 17 at 13.[2]

Here, the harm already has come to pass.  The Plaintiff and other businesses have struggled

during the pandemic with significant business losses yet no corresponding decrease in insurance

premiums.  Defendants point to policy provisions regarding premium audits at the end of the

policy period, but in the meantime, Defendants are enjoying a windfall while businesses struggle

to survive.  Moreover, as Plaintiff's Complaint notes and Defendants themselves concede,

nothing in the policies precludes premium adjustments during the policy term, and indeed, as

discussed below, the policy terms and the implied duty of good faith and fair dealing may require

that here.[3]

II.     Plaintiff's Claims Are Not Barred by a Failure to Exhaust Administrative Remedies

         The Defendants mistakenly rely on *McLiechey v. Bristol W. Ins. Co.*, and the Insurance

Code provisions involved in that case, to argue that Plaintiff failed to exhaust administrative

remedies.  *McLiechey v. Bristol W. Ins. Co.*, 408 F. Supp. 2d 516 (W.D. Mich. 2006), *aff'd*, 474

F.3d 897 (6th Cir. 2007).  The statutes involved in *McLiechey*, however, are not applicable here

and the court's analysis in that case does not apply.

         The *McLiechey* case involved a husband and wife who claimed their insurer violated

Chapter 21 of Michigan's Insurance Code by using insureds' economic circumstances in setting

_____

[2] In one Supreme Court decision cited by Defendants, the court stated that "[a] plaintiff who challenges a
statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's
operation or enforcement."  *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298, 99 S. Ct.
2301, 2308 (1979).  However, the court added: "But '[o]ne does not have to await the consummation of
threatened injury to obtain preventive relief.  If the injury is certainly impending, that is enough.'"  *Id.*

[3] Defendants claim they sent correspondence to all EMC agents regarding "*possible* mid-term exposure
adjustments," but there is no proof this was sent specifically to Plaintiff's agent.  Doc. No. 17-1 & 17-2
(emphasis added).  Moreover, the email submitted by Defendants references only the possibility of mid-
term exposure adjustments to sales and payroll estimates.  It does not provide any assurances of a timely
premium refund.

automobile insurance rates.  The court first held that there was no private cause of action under Chapter 21 of the Insurance Code.  408 F. Supp. 2d at 518.  The court also held that the plaintiffs did not have a cause of action under the Michigan Consumer Protection Act because the MCPA did not apply to the business of insurance as it is a regulated business subject to separate statutory regulation.  *Id.* at 523-24.  The court therefore dismissed the plaintiffs' claims for failure to state a claim upon which relief can be granted.  *Id.* at 524.  The court went on to hold in dicta, that even if the plaintiffs had stated a claim, the court would dismiss the case "because Plaintiffs have failed to exhaust the administrative remedies provided in the Michigan Insurance Code[.]"  *Id.*[4]

The Defendants argue for the same result here, observing that in Michigan, auto insurance policies and rates are "subject to extensive regulation," and provide insureds with "a remedy for contesting the rates they are charged," citing Sections 500.2113 and 500.2114.  Doc. No. 17 at 17-18.  But the provisions Defendants cite are not applicable here.  Chapter 21 of Michigan's Insurance Code governs home and auto insurance, but only ***non-commercial*** auto coverage used for "personal, family, or household purposes."[5]

---

[4] The Sixth Circuit did not address the exhaustion of remedies issue in affirming the district court.  *See* 474 F.3d at 900.

[5] Chapter 21 covers only coverage for "private passenger nonfleet automobiles," which are defined as "a motor vehicle of the following type with at least four wheels, used in whole or in part for personal, family, or household purposes, not owned or registered by a corporation, partnership, or unincorporated association (unless leased long term to an individual or a married couple) …."  Michigan Automobile Insurance Placement Facility Plan of Operation, § 7, *available at* https://www.maipf.org/documents/10182/14271/MAIPF+Plan+of+Operation+1-1-2020.pdf/a4231ffc-639c-409b-8fc0-f4619319a310, page 6.  *See* Mich. Comp. Laws §§ 500.2102(2) (defining "automobile insurance" as insurance for "private passenger nonfleet automobiles"), 500.2104(1) ("'Private passenger nonfleet automobile' means a motorized land vehicle designed for transporting passengers or goods, subject to specific contemporary definitions for insurance purposes pursuant to section 3303."), 500.3303(f) ("'Private passenger nonfleet automobile' means a motorized vehicle designed for transporting passengers or goods, subject to specific contemporary definitions for insurance purposes as

The extensive regulation and detailed administrative remedies provided in the Insurance

Code for homeowners and individual/household auto insurance, while perhaps justified in the

consumer context, are inapplicable here.  Defendants focus on these consumer-oriented

provisions and do not point to similar provisions in the commercial insurance context, stating

only, with no discussion, that "[c]asualty insurance is likewise subject to comprehensive

regulation."  Doc. No. 17 at 18 (citing Mich. Comp. Laws §§ 500.2403, 500.2406-.2408,

500.2410).  None of the statutory provisions cited by Defendants are similar to those at issue in

*McLiechey* addressing the resolution of disputes with an insurer (Section 500.2113) or grievance

procedures for filings (Section 500.2114).

III.   Plaintiff's Claims Should Not Be Dismissed for Failure to State a Claim

    A.   Motion to Dismiss Standard

 "'A motion to dismiss under Rule 12(b)(6) is disfavored and rarely granted.'"

*Damnjanovic v. United States Dep't of Air Force*, 135 F. Supp. 3d 601, 605 (E.D. Mich. 2015)

(citations omitted).  *See also McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012) ("A motion to

dismiss for failure to state a claim is disfavored ….").  The Sixth Circuit recently stated the

standards governing a motion to dismiss:

> When evaluating a complaint's sufficiency, courts use a three-step
> process.  First, the court must accept all of the plaintiff's factual allegations as
> true.  *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007).  Second, the court
> must draw all reasonable inferences in the plaintiff's favor.  *Id.*  And third, the
> court must take all of those facts and inferences and determine whether they
> plausibly give rise to an entitlement to relief.  [*Ashcroft v.*] *Iqbal*, 556 U.S. [662,]
> 679, 129 S. Ct. 1937 [(2009)].  If it is at all plausible (beyond a wing and a
> prayer) that a plaintiff would succeed if he proved everything in his complaint, the
> case proceeds.

---

provided in the plan of operation."), 3301 *et seq.* (creating placement facility which every insurer
authorized to write automobile insurance in state shall participate).

*Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).[6]  *See also U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 407 (6th Cir. 2016) ("'The district court must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.'").  Under these liberal standards, Plaintiff's claims survive a motion to dismiss for failure to state a claim.

    B.       Plaintiff's Claims Are Sufficient to State a Claim

Defendants argue that a breach of contract claim must fail because a premium refund is owed, if at all, only at the end of the policy term.  In interpreting an insurance policy, the court must "determine what the agreement was and effectuate the intent of the parties."  *Hunt v. Drielick*, 496 Mich. 366, 372-73, 852 N.W.2d 562, 565 (2014) (quoting *Auto–Owners Ins. Co. v. Churchman*, 440 Mich. 560, 566, 489 N.W.2d 431 (1992)).  If a term is not defined in the policy, it should be given its commonly used or understood meaning, including as defined in dictionaries.  *Mid-Century Ins. Co. v. Fish*, 749 F. Supp. 2d 657, 672 (W.D. Mich. 2010) (applying Michigan law).  Also, under Michigan law insurance policies must be read as a whole, including the exclusions.  *Allstate Insurance Co. v. King*, 815 F. Supp. 1071, 1073 (W.D. Mich. 1993).

Ambiguities in an insurance policy are construed against the insurer, and "[r]eview of an insurance policy for ambiguity is a question of law."  *Vandenberg v. GE Life & Annuity Assur. Co.*, 408 F. Supp. 2d 487, 490 (W.D. Mich. 2005).  As this court explained in *Vandenberg*:

> An insurance policy's provisions are ambiguous if they are reasonably susceptible to two different meanings.  *Raska v. Farm Bureau Mut. Ins. Co. of*

---

[6] *Doe v. Baum* was not followed on other grounds.  *See Haidak v. University of Massachusetts-Amherst*, 933 F.3d 56, 69 (1st Cir. 2019).

*Mich.*, 412 Mich. 355, 362, 314 N.W.2d 440 (1982).  In *Raska*, the Michigan Supreme Court explained an insurance policy ambiguity as:  "If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances the contract is ambiguous and should be construed against its drafter and in favor of coverage." *Id.*

*Id.  See also Stone v. Auto-Owners Ins. Co.*, 307 Mich. App. 169, 179, 858 N.W.2d 765, 771 (2014) ("'[I]f there is more than one way to reasonably interpret a contract, i.e., the contract is ambiguous, and one of these interpretations is in accord with the reasonable expectations of the insured, this interpretation should prevail[.]'") (quoting *Wilkie v. Auto–Owners Ins. Co.*, 469 Mich. 41, 51, 62, 664 N.W.2d 776 (2003)).

The Defendants point to the premium audit provisions of the policies to argue that no premium adjustment is made during the policy term.  However, that policy language, quoted above, does not unambiguously support such a construction, especially when read in conjunction with the policies as a whole and the implied covenant of good faith and fair dealing implied in every contract.  *See, e.g., Michigan Appalachian Railcar Servs., Inc. v. Boatright Enterprises, Inc.*, 602 F. Supp. 2d 829, 877-78 (W.D. Mich. 2008) ("Michigan case law does hold that 'the covenant of good faith and fair dealing is an implied promise in every contract.'  The covenant is a promise that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'") (citations omitted).

For example, the policies clearly contemplate premium adjustments during the course of the policy period.  *See* Doc. No. 15-1 at 41 ("If you unintentionally fail to disclose any exposures existing at the inception date of this policy, we will not deny coverage under this Coverage Part solely because of such failure to disclose.  However, this provision does not affect our right to collect additional premium …."); 15-2 at 49 (same); 15-3 at 37 ("If your premium is flat, no additional premium is normally collected during the policy period unless there is a substantial

7

change in type and/or scope of your operations.  If there is a substantial change in your

operations and if there is an additional charge for your 'underlying insurance,' we have the right

to charge an additional premium also.").

The Defendants attack Plaintiff's claim for unjust enrichment arguing such claims

"cannot be maintained if an express contract governs the parties' rights[.]"  Doc. No. 17 at 20.

The case they cite for this proposition is an unreported decision where the plaintiff did not

oppose the defendant's motion.  *See Evens-McCarthy v. Nationwide Mut. Ins. Co.*, No. 08-CV-

12049-DT, 2008 WL 11355526, at *4 (E.D. Mich. July 24, 2008).  However, the cases cited in

that opinion were decided on summary disposition or summary judgment.  *See Able Demolition*

*v. City of Pontiac*, 275 Mich. App. 577, 586 n.4 (2007) (citing *Martin v. East Lansing Sch. Dist.*,

193 Mich. App. 166, 177 (1992)).  As this Court has stated, alternative theories of relief may be

stated, especially at the "early stages of a case."  *Airgas USA, LLC v. Glen's LLC*, No. 1:18-CV-

719, 2019 WL 1515157, at *3 (W.D. Mich. Feb. 14, 2019) ("The Court also does not view

Airgas's allegations regarding the existence of an express contract (via the Terms and

Conditions) to be fatal to Airgas's present claim of account stated, as well as the claims for

conversion and unjust enrichment as Glen's alleges.  Parties are permitted to plead alternative

theories of their case.").  *See also In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F.

Supp. 3d 975, 1009 (E.D. Mich. 2017) ("[U]njust enrichment claims routinely are allowed to

proceed when pleaded in the alternative to other viable claims for relief.") (citing case denying

motion to dismiss unjust enrichment claims pleaded under the laws of 50 states).  Plaintiff does

not seek a double recovery, but only states claims for unjust enrichment and money had and

received as alternatives in the event it cannot recover under a breach of contract theory.[7]

---

[7] The Defendants offer no argument whatsoever with respect to Plaintiff's claim of money had and received, and so their motion with respect to that cause of action should be deemed abandoned. *Tredit*

IV.     <u>Plaintiff's Class Allegations Are Sufficient</u>

     A.     Legal Standard

As a preliminary matter, Defendants' motion to strike the FAC's class allegations is premature.  It is an attempt to circumvent this Court's ruling on a proper motion to certify a class in this case.  As a leading treatise on class actions points out, defendants' attempts to defeat certification "prior to the completion of discovery are 'generally regarded with disfavor.'"  3 Newberg on Class Actions § 7:22 (5th ed.) (citing cases, including *Bearden v. Honeywell Intern., Inc.*, 2010 WL 1223936, *9 n.14 (M.D. Tenn. 2010)).  Indeed, "[w]hen a defendant moves to defeat certification prior to the end of discovery, many courts simply deny the motion outright on the grounds that the plaintiff is entitled to discovery on class certification issues."  *Id.*

In the Sixth Circuit and elsewhere, courts are reluctant to rule on class certification before any discovery.  *See, e.g., APB Assocs., Inc. v. Bronco's Saloon, Inc.*, 315 F.R.D. 200, 213 (E.D. Mich. 2016) ("Maintainability [as a class action] may be determined by the court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide ....  The parties should be afforded an opportunity to present evidence on the maintainability of the class action.") (quoting *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)); *Jimenez v. Allstate Indem. Co.*, No. 07-CV-14494, 2010 WL 3623176, at *3 (E.D. Mich. Sept. 15, 2010) ("When a

_____

*Tire & Wheel Co. v. Regency Conversions, LLC*, 636 F. Supp. 2d 598, 603-04 (E.D. Mich. 2009) ("Although WBAH, through its present motion, purports to seek the dismissal of each of the claims asserted against it, including Plaintiff's claim of unjust enrichment, the brief in support of WBAH's motion fails to advance any argument whatsoever as to why Plaintiff has failed to state a viable claim of unjust enrichment.  Accordingly, the Court agrees with Plaintiff that any such challenge has been abandoned.") (footnote omitted).

defendant moves to strike class action allegations on the basis that class certification is precluded as a matter of law, the defendant bears the burden of establishing that the plaintiff will be unable to demonstrate facts supporting certification, even after discovery and the creation of a full factual record. … When the defendant challenges class certification based solely on the allegations in the complaint, … the opposing party has the burden of 'demonstrating from the face of [the plaintiff's] complaint that it will be impossible to certify the classes alleged by the plaintiff[] regardless of the facts the plaintiff[] may be able to prove.'") (citations omitted).

B.       Plaintiff's Class Definitions Are Not Overinclusive "Fail-Safe" Definitions

In their attempt to short-circuit a full consideration of the merits of class certification, Defendants first argue that Plaintiff's class definitions are overly inclusive, citing this Court's decision in *Oom v. Michaels Companies Inc.*, No. 1:16-CV-257, 2017 WL 3048540 (W.D. Mich. July 19, 2017).  The Defendants argue that, as in *Oom*, the class definitions here are "not ascertainable" because they are "fail-safe" definitions.  As this Court explained in *Oom*:

> The "fail-safe" class is an aspect of ascertainability.  "A fail-safe class 'is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'"  "Such classes are improper because '[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment.'"  A fail-safe class is also "unfair to the defendant because 'it prevents an adverse judgment being entered against plaintiffs, and it is unmanageable because the members of the class could only be known after a determination of liability.'"

2017 WL 3048540, at *4 (citations omitted).  However, the class definitions in the present case are clearly ***not*** fail-safe definitions when compared to those at issue in *Oom*.  In this case, the first class is defined as "[a]ll persons and entities nation-wide that: (a) purchased commercial liability insurance with EMC that had a six (6) month or longer policy period; (b) paid a premium for the coverage based on EMC's rates and rules; and (c) were subject to a Stay at

10

Home Order."  Doc. No. 15 at 9 ¶ 58(a).  The other two classes are similarly defined.  *Id.* ¶

58(b), (c).  In contrast, in the *Oom* case the Court explained:

> But the proposed class is not just customers who ordered preservation
> mounting.  Rather, the proposed class is anyone who paid for preservation
> mounting and did not receive preservation mounting; it includes only the
> customers that Plaintiffs claim are entitled to relief.  As such, it is an improper
> fail-safe class.  *See Randleman* [*v. Fidelity Nat'l Title Ins. Co.*], 646 F.3d [347,]
> 352 [(6th Cir. 2011)] (explaining that a class defined by customers entitled to
> special rates for title insurance and who paid more such insurance was an
> improper fail-safe class).

2017 WL 3048540, at *5.  The problem identified by the Court in *Oom* is clearly not present

here.

> C.      Plaintiff's Proposed Classes Satisfy Rule 23(a) and (b)

The Defendants' other challenges to the class allegations also fail.  They challenge the

prerequisites of a class action under Rule 23(a)(2) (commonality) and Rule 23(a)(3) (typicality),

as well as certification under Rule 23(b)(3) (where common issues predominate, *and* a class

action is superior to other methods of adjudication).[8]

> 1.  Commonality

First, Defendants claim "[n]o common issues of fact or law predominate," with their

argument conflating somewhat the issues of commonality and predominance.  Doc. No. 17 at 26.

As the Sixth Circuit has stated in a case cited by Defendants, "we have said that there need only

be one question common to the class."  *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th

Cir. 1998).[9]  For this reason, this Court has stated:  "The standard is not demanding."  *Rockey v.*

---

[8] In a footnote, Defendants ask the Court to disregard Plaintiff's allegations under Rule 23(b)(1) and (2),
claiming Plaintiff did nothing more than "excerpting their language."  Doc. 17 at 30 n.5.

[9] The *Sprague* court held there was no commonality of issues in a case vastly different from the one here,
where the Defendants' course of conduct toward all of their insureds in the face of a global pandemic is at

*Courtesy Motors, Inc.*, 199 F.R.D. 578, 583 (W.D. Mich. 2001).  *See also Garner Properties &*

*Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 622 (E.D. Mich. 2020) (commonality

requirement "does not demand that all questions of law and fact raised in the complaint are

common, but simply requires a common question or law or fact").

  As this Court has recognized, the "common issue must be susceptible to common proof."

*Oom*, 2017 WL 3048540 at *6.  Many of the issues identified by the Plaintiff are susceptible to

common proof, including the factors the Defendants used in setting premiums, whether the

pandemic affected those factors generally, and how the Defendants reacted in response to the

pandemic given the vastly reduced exposure to the risks they insure against.

  2.  Predominance

  As to predominance under Rule 23(b)(3), this Court has observed:  "To satisfy this

requirement, the Court must find that the 'issues subject to generalized proof and applicable to

the class as a whole predominate over those issues that are subject to only individualized proof.'"

*Id.* at *7 (citing *Randleman*, 646 F.3d at 352-53).  The Defendants cite a Sixth Circuit case

involving "junk faxes," where the court held that identifying which individuals consented to

receive the faxes "would undoubtedly be the driver of the litigation."  *Sandusky Wellness Ctr.,*

*LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017), *as corrected on denial*

*of reh'g en banc* (Sept. 1, 2017).  Here, in contrast, the Defendants apparently made a decision as

to *all* of their insureds not to provide premium relief similar to that given by many homeowners

and auto insurance carriers.

---

issue. *See Sprague*, 133 F.3d at 398 (ERISA action in which early retirees were all given separate "side
deals" and asserted estoppel claims depending on each retiree's subjective understandings and reliance).

As the Sixth Circuit has recently explained, "[a] class may be certified based on a predominant common issue 'even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020) (quoting 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778, at 123-24 (3d ed. 2005)).  The Sixth Circuit recently quoted the Supreme Court to state:  "What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 503 (6th Cir. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 180 L.Ed.2d 374 (2011)).  That is plainly the case here.  The central issue in the case is whether the policy language, properly construed, requires a refund of over-paid premiums.  That common question will drive the resolution of this case.

The Defendants do not, and could not, argue that a class action is not "superior to other available methods for fairly and efficiently adjudicating the controversy" within the meaning of Rule 23(b)(3).  The classes proposed by the Plaintiff consist of numerous businesses, many of them small businesses, who are already suffering financially from the effects of the pandemic and who would be unlikely to commence an action against their insurer, expending time and resources on an uncertain recovery, most likely of a relatively small amount.  As one court noted, "class certification is superior to alternative methods of adjudicating the controversy where 'class members are not likely to file individual actions [because] the cost of litigation would dwarf any potential recovery.'"  *Garner Properties & Mgmt., LLC*, 333 F.R.D. 614, 622 (citation omitted).

13

3.  Typicality

Finally, as to typicality, this Court has explained:

> "The test for typicality ... is not demanding[.]"  "Typicality may be presumed when the plaintiff's claim 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members.'"  This requirement is satisfied "so long as the plaintiff alleges a common scheme relative to all members of the class."

*Oom*, 2017 WL 3048540, at *5 (citations omitted).  Unlike the *Serrano* case cited by Defendants, in the present case the Defendants apparently acted similarly toward all of their insureds.  Unlike other insurance companies who provided premium refunds to their insureds based on reduced exposure, the Defendants failed to do so, and this failure is common to all members of the classes here.  In contrast, in the *Serrano* case, involving employment discrimination, the court denied the plaintiffs' motions for class certification where "thousands of managers at hundreds of [defendant's] locations made hiring decisions based on widely differing objective and subjective factors" which would "require an individualized and fact-intensive inquiry into the particular circumstances of the decision not to hire[.]"  *Serrano v. Cintas Corp.*, No. CIV. 04-40132, 2009 WL 910702, at *8 (E.D. Mich. Mar. 31, 2009), *aff'd sub nom. Davis v. Cintas Corp.*, 717 F.3d 476 (6th Cir. 2013).

The Defendants focus on proof of damages and the possibility of unique defenses to argue typicality is not met.  They cite *On Star* for the proposition that typicality is "lacking when a defendant may interpose unique defenses to each member's claims."  Doc. No. 17 at 28.  However, in that case the defendants had unique defenses against each class member's warranty claims based on the statute of limitations or warranty expiration, and there were also individualized issues as to certain elements each plaintiff's affirmative claim (e.g., reliance or causation).  *In re OnStar Contract Litig.*, 278 F.R.D. 352, 375 (E.D. Mich. 2011).  As this Court has explained:

14

The "typicality" requirement is that "plaintiff and each member of the represented group have an interest in prevailing on similar legal claims."  This may be satisfied even if there are factual distinctions between the claims of named plaintiffs and those of the class members, differences in the amount of damages claimed, or even differences in the availability of certain defenses against a class representative.

*Roman v. Korson*, 152 F.R.D. 101, 106 (W.D. Mich. 1993) (citations omitted).  Thus, Plaintiff's

class allegations should not be stricken, at least not at this early stage of litigation.

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in its entirety and this

litigation should be allowed to move forward.

Respectfully submitted,

M. BLAKE HEATH,
TRIAL ATTORNEY LLC

By /s/ M. Blake Heath
 M. Blake Heath, #61939
 917 W. 43rd Street, Suite 100
 Kansas City, MO 64111
 (816) 931-0048 Phone
 (816) 931-4803 Fax
 blake@heathinjurylaw.com

**ATTORNEY FOR PLAINTIFF**

15